FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 2 8 2010

GREGORY C. LANGHAM
CLERK

1 David and Catherine Brackhahn
2 122 Clearwater Drive
3 Pagosa Springs CO 81147
4

5 UNITED STATES DISTRICT COURT
6 DISTRICT OF COLORADO

| | |
|---|---|
| **David** and Catherine **Brackhahn,**<br><br>Plaintiff,<br><br>vs.<br><br>**GMAC** Mortgage, LLC,<br><br>Defendant | Case#<br><br>10-cv-01906-REB-MEH<br><br><br>**RESPONSE TO DEFENDANTS**<br><br>**MOTION TO DISMISS** |

7 Date: October 27, 2010

8

9 (1) The Plaintiff, in their Original Petition, plead that Defendant charged false fees as
10 stipulated to Plaintiff as listed on the HUD 1 Settlement Statement, included as Exhibit 1.
11 Plaintiff specifically plead that Defendant, at the time of settlement of the contract, failed
12 to provide documentation to establish that said fees were not included in those fees
13 expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be
14 charged to Plaintiff at settlement.

15 (2) Plaintiff stipulated each fee charged with particularity. Plaintiff calculated the precise
16 amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as
17 stipulated by the Truth In Lending Statement provided by Defendant (see Exhibit 2).
18 Plaintiff specifically alleged that said fees were fraudulent. Plaintiff alleged that
19 Defendant failed to provide full disclosure by failing to provide documentation to prove
20 that the above fees were authorized by law, that the services alleged provided were

21  necessary, that the amount charged for each service was necessary, and that Defendant
22  did not take an undisclosed markup on said fees.

23  (3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan
24  broker toward the perpetration of a carefully contrived connivance, provided the amounts
25  listed in the HUD 1 Settlement Statement to the loan broker as an undisclosed yield
26  spread premium. Said undisclosed yield spread premium is alleged to be in addition to
27  the one percent loan origination fee, charged to Plaintiff, as allowed by law. Plaintiff
28  alleged that said payment to the broker of undisclosed yield spread premium was a
29  predicate act intended to improperly influence loan broker to misrepresent facts to
30  Plaintiff, to give partial disclosure of those facts which would appear favorable to the
31  intent of the loan broker, while failing to give full disclosure of other facts that would not
32  seem favorable to the contract.

33  (4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore,
34  Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's
35  pleading, or, in the alternative, treat Defendant's pleading as a request for more definite
36  statement, in which case, Plaintiff will provide a more definite statement as requested.

37  (5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a
38  frivolous pleading and for failing to speak with candor to the court, as Defendant is
39  totally inept or acted with deliberate intent to improperly influence the court with false
40  pleadings.

41  **STATUTE OF LIMITATIONS/ EQUITABLE TOLLING**

42  (6) Plaintiff acted with due diligence by dealing only with licensed professionals. Plaintiff,
43  by so doing had cause to trust in the proactive statements of Defendant concerning the
44  true value of the property, the condition of the real estate market, and the propriety of the
45  fees charged to Plaintiff at closing. Defendant acted with deliberate malice toward
46  Plaintiff in that Defendant, by making proactive statements to Plaintiff that revealed

certain facts which would give a reasonable person of ordinary prudence cause to believe the current loan was properly priced and that said loan was the only loan Plaintiff qualified for, while withholding facts which would have given Plaintiff full disclosure. Defendant actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff.

    a. The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998))*.

(7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted immediately with due diligence and engaged professionals to examine the propriety of the practices engaged in by Defendant.

    *a.* The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987).

(8) Defendants acted in concert and collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments, and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

    a. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [\*15] Rest.2d Contracts § 205.* A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

78      b. "A person who provides brokerage services to a borrower in a covered loan
79         transaction by soliciting lenders or otherwise negotiating a consumer loan
80         secured by real property, is the fiduciary of the consumer...this fiduciary duty [is
81         owed] to the consumer regardless of whom else the broker may be acting as an
82         agent for . . . The fiduciary duty of the broker is to deal with the consumer in
83         good faith. If the broker knew or should have known that the Borrower will or
84         has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to
85         place them in that loan." *(California Department of Real Estate, Section 8:*
86         *Fiduciary Responsibility, www.dre.ca.gov).*

87 (9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market
88     were finally made public in the popular media.

89      a. Other courts have indicated the one-year limitations period commences when the
90         plaintiff is placed on inquiry notice, unless the plaintiff can show the actual
91         exercise of reasonable diligence to discover the fraud. If the plaintiff can show
92         the exercise of such diligence, the limitations period begins to run when the
93         plaintiff actually discovers the facts underlying the alleged fraud. If, however, the
94         plaintiff cannot show such actual diligence, constructive knowledge of the fraud
95         is imputed to the plaintiff as of the date of inquiry notice. For example, in *Dodds*
96         *v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993),* the Second Circuit stated
97         that "when the circumstances would suggest to an investor of ordinary
98         intelligence the probability that s/he has been defrauded, a duty of inquiry arises,
99         and knowledge will be imputed to the investor who does not make such an
100        inquiry." *Id. at 350.* The Dodds court further stated that the doctrine of "equitable
101        tolling will stay the running of the statute of limitations only so long as the
102        plaintiff has exercised reasonable care and diligence in seeking to learn the facts
103        which would disclose [**35] fraud." Id. (internal quotations omitted). *Sterlin v.*
104        *Biomune Sys., 154 F.3d 1191, 1201.*

105 (10)    When Plaintiff became aware of potential fraud by the licensed professionals that
106      Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the
107      fraud complained of herein.

108      a. Plaintiff exercised due diligence, and the time limitations in the Truth in Lending
109         Act should be tolled so that the intent of the Legislature may be realized. The
110         Seventh Circuit, essentially merging the inquiry notice and reasonable diligence
111         standards into one governing standard, has indicated that a plaintiff is not put on
112         inquiry notice until the plaintiff reasonably should have discovered the fraud. *See*
113         Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry
114         notice does not begin to run unless and until the investor is able, with the exercise
115         of reasonable diligence (whether or not actually exercised), to ascertain the
116         information needed to file suit."); *see also* Law v. Medco Research, Inc., 113
117         F.3d 781, 785 (7th Cir. 1997) ("The plaintiff gets a year after he learned or

118  should have learned the facts that he must know to know that he has a claim.").
119  An earlier Seventh Circuit case, however, rejected the plaintiff's argument that
120  "in spite of reasonable diligence, it could not discover the facts underlying the
121  defendants' fraud" and held that the one-year limitations period began to run once
122  the plaintiff was placed on inquiry notice of the possibility of fraud. Whirlpool
123  Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995). Sterlin
124  v. Biomune Sys., 154 F.3d 1191, 1201.

125  (11)   In the alternative, the acts as alleged against Defendants amount to criminal fraud,
126  in that, in a scheme to deceive and mislead Plaintiff, the Defendants, by sham and
127  trickery, induced Plaintiff into entering into a predatory loan contract wherein Plaintiff
128  was charged amounts not allowed by law. Defendants, in perpetrating the above
129  referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the
130  trust engendered by the laws intended to protect Plaintiff and others similarly situated
131  from just the sort of abuse visited on Plaintiff.

132  (12)   Plaintiff alleges a scheme of fraud and, therefore, upon proof at trial, Plaintiff has
133  a right to seek common law equitable recoupment.

134  **PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY**

135  (13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees
136  improperly charged to Plaintiff at closing in order to induce the originator of the loan to
137  breach his fiduciary duty to Plaintiff. By doing this, they committed common law fraud
138  by making false statements to Plaintiff in order to convince Plaintiff that Plaintiff only
139  qualified for a more expensive loan product than Plaintiff actually qualified for. Plaintiff
140  is prepared to prove up said claims after discovery, at a trial on the merits.

141  (14) Plaintiff alleged that Defendant made partial disclosure of alleged facts concerning
142  the conditions of the loan which is the basis for the issuance of the security instrument
143  and lien document at issue. Plaintiff is prepared to prove at trial, after complete
144  discovery, that Defendant failed to give full disclosure of facts that, if disclosed would
145  have caused Plaintiff to make a different decision than the one made.

(15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full disclosure. Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

(16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender. Said allegations are reiterated below with specificity. Plaintiff alleged that the original lender sold the security instrument immediately after closing, but failed to transfer the lien document to the purchaser of said security instrument. Plaintiff is prepared to prove, subsequent to discovery, that the lender, while still holding the security instrument, received consideration and, therefore, could not be harmed rendering the lien unenforceable.

(17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained possession of the lien document in order to be able to file an IRS Form 1099a and write the entire amount of the original note off lender's capital gains tax and, thereby, receive consideration a second time.

(18) Plaintiff alleged, and is prepared to prove at trial that, the original security instrument, if said instrument still exists, may give the holder a claim against the signator, but have no claim against the property.

(19) Plaintiff alleged, and is prepared to prove at trial that, GMAC Mortgage, LLC, and the attorneys claiming to represent same, have committed fraud by representing to the court that GMAC Mortgage, LLC, is a real party in interest in the contract of sale and has standing to take said property from defendant when no such claim exists.

(20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant, by claiming standing to express the provisions of the contract of sale and lien, claim to be a real party in interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

172       ***LENDER CHARGED FALSE FEES***

173       (21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by
174       the Real Estate Settlement Procedures Act, as said fees were simply contrived and not
175       paid to a third party vendor.

176       (22) Lender charged other fees that were a normal part of doing business and which were
177       included in the finance charge.

178       (23) Below is a listing of the fees charged at settlement. Neither at settlement, nor at any
179       other time did Lender or Trustee provide documentation to show that the fees herein listed
180       were valid, necessary, reasonable, and proper to charge Petitioner.

| Code | Description | Amount |
|---|---|---|
| 803 | Appraisal | $375.00 |
| 805 | Tax Service Fee | $79.00 |
| 806 | Flood Certification Fee | $11.00 |
| 807 | Underwriting Fee | $320.00 |
| 808 | Yield Spread Premium | $7,735.00 |
| 809 | Processing Fee | $375.00 |
| 810 | Doc Prep Fee | $275.00 |
| 811 | Courier Fee | $150.00 |
| 901 | Interest from 10/13/06 to 11/01/06 @ 92.340000 /day (19 days) | $1,754.46 |
| 1101 | Settlement fee | $250.00 |
| 1103 | Recording Fees | $22.00 |
| 1108 | Title Insurance | $1,375.00 |
| 1109 | Lenders Coverage | $1,091.00 |
| 1111 | Tax Cert Fee | $15.00 |
| 1112 | Express/Handling Fee | $60.00 |
| 1201 | Recording Fee Mortgage | $116.00 |

181       (24) Debtor is unable to determine whether or not the above fees are valid in accordance
182       with the restrictions provided by the various consumer protection laws. Therefore, the
183       Plaintiffs demanded in their complaint to this Court that the Defendant provide the following:

184       a. a complete billing from each vendor who provided the above listed services;

185       b. the complete contact information for each vendor who provided a billed service;

186       c. clear stipulation as to the specific service performed;

| | |
|---|---|
| 187 | d. a showing that said service was necessary; |
| 188 | e. a showing that the cost of said service is reasonable; |
| 189 190 | f. a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge. |
| 191 | (25) The above charges have been disputed and deemed unreasonable until such time as |
| 192 193 194 | said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer. |
| 195 196 197 198 | (26) In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $283,786.74. This amount will be reduced by the amount of items above when said items are fully documented. |

### A. RESPA PENALTIES

200 (27) From a cursory examination of the records, with the few available, the apparent
201 RESPA violations are as follows:

202     a. Good Faith Estimate not within limits

203     b. No HUD-1 Booklet

204     c. Truth In Lending Statement not within limits compared to Note

205     d. Truth in Lending Statement not timely presented

206     e. HUD-1 not presented at least one day before closing

207     f. No Holder Rule Notice in Note

208     g. No 1st Payment Letter

209             1. No signed and dated :

210             2. Financial Privacy Act Disclosure;

211             3. Equal Credit Reporting Act Disclosure;

212             4. Notice of right to receive appraisal report;

213             5. Servicing disclosure statement;

214             6. Borrower's Certification of Authorization;

215             7. Notice of credit score;

216             8. RESPA servicing disclosure letter;

217             9. Loan discount fee disclosure;

218             10. Business insurance company arrangement disclosure;

219             11. Notice of right to rescind.

220  (28) The courts have held that the borrower does not have to show harm to claim a violation of
221  the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.
222  And, in as much as the courts are directed to assess a penalty of no less than two hundred
223  dollars and no more than two thousand, considering the large number enumerated here, it is
224  reasonable to consider that the court will assess the maximum amount for each violation.

225  (29) Since the courts have held that the penalty for a violation of RESPA accrues at
226  consummation of the note, borrower has calculated that, the number of violations found in a
227  cursory examination of the note, if deducted from the principal, would result in an
228  overpayment on the part of the borrower, over the life of the note, of $363,851.92.

229  (30) If the violation penalty amounts for each of the unsupported fees listed above are
230  included, the amount by which the borrower would be defrauded is $380,148.95

231  (31) Adding in RESPA penalties for all the unsupported settlement fees along with the
232  TILA/Note variance, it appears that lender intended to defraud borrower in the amount of
233  $1,304,041.07

## MORE DEFINITE STATEMENT

235  (32) Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the
236  filing of the original complaint, Plaintiff has made inquiry and found evidence of knowing and
237  deliberate criminal acts by lenders, intended to defraud Plaintiff of Plaintiff's property, and
238  Plaintiffs are prepared to file a more definite statement with the court.

## ONGOING CRIMINAL CONSPIRACY

240  (33) Defendant complains that the document is similar to other documents alleging wrongdoing
241  by banks and lending institutions. This begs a question: does the wrongdoing of Defendants
242  become somehow less wrong simply because they do it to everyone? Simply because lenders are
243  accused by numerous plaintiffs of acting in concert and collusion with one another, of the
244  perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended
245  to strip the people of this country of the equity in their property, and thereby, deprive them of
246  their homes, is hardly a valid objection. It seems Defendants, by complaining that others have
247  accused them of the same sorts of fraud, should somehow render the claims made here less valid.
248  This also simply demonstrates the extent of their acts of theft and fraud. Plaintiff suggests,
249  instead of attacking the messenger, the court may consider convening a court of inquiry to
250  examine the fraudulent practices of these Defendants and encourage the federal government to
251  pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## CONCLUSION

253  (34) Plaintiff maintains that Defendant's motion of dismissal is without merit, and that counsel,
254  in making said claim, has failed to speak with candor with the court.

```
255    Respectfully Submitted,
256
257    _____          _____
258    David Brackhahn                          Catherine Brackhahn
259
260
261
262                              VERIFICATION
263    We, David and Catherine Brackhahn , do swear and affirm that all statements made herein are
264    true and accurate, in all respects, to the best of our knowledge.
265    David and Catherine Brackhahn
266    122 Clearwater Drive
267    Pagosa Springs , CO 81147
268    _____          _____
269    David Brackhahn                          Catherine Brackhahn
270
271    The Persons above, who proved to me on the basis of satisfactory evidence to be the persons
272    whose names are subscribed to this document and acknowledged to me that he and she
273    executed the same in their authorized capacities and that by their signatures on this instrument,
274    are the persons who executed this instrument.
275    I certify under PENALTY OF PERJURY under the laws of this State that the foregoing
276    paragraph is true and correct.           Witness my hand and official seal.
277
278    _____          CAROLYN J CHURCH
279    NOTARY PUBLIC IN AND FOR                 Notary public
280    THE STATE OF COLORADO                    State of Colorado
                                                My Commission Expires 01-10-2013
                                                Notary Seal
281
282
283
284
285
```

CERTIFICATE OF SERVICE   U.S.P.S Overnight Express Mail
# EG628268990 US

I, David Brackhahn, do swear and affirm that by ~~regular USPS Certified Mail, Return Receipt Requested~~, I have served on the 27th day of October, 2010, a signed copy of "**Response to Defendant's Motion to Dismiss**" to:

Karen Brody, Esq., Atty for GMAC Mortgage, LLC, 370 17th Street, Suite 4900, Denver, Colorado 80202,

and have sent Ms. Brody a copy of same, via E-mailed pdf attachment, on this same date.

*/s/ David Brackhahn*
David Brackhahn
122 Clearwater Drive
Pagosa Springs CO 81147

*/s/ David Brackhahn*
**David Brackhahn**

The Person above, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he executed the same in his authorized capacity and that by his signature on this instrument is the person who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

*/s/ Carolyn J Church*

CAROLYN J CHURCH
Notary public
State of Colorado
My Commission Expires 1-10-2013

**NOTARY PUBLIC IN AND FOR**   Notary Seal
**THE STATE OF COLORADO**

**EXHIBIT #1**

OMB NO. 2502-0265

| A. | B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT **SETTLEMENT STATEMENT** | 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
| | 6. FILE NUMBER: A-135505 | | 7. LOAN NUMBER: 00970702390 | | |
| | 8. MORTGAGE INS CASE NUMBER: | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0   3/98   (A-135505/A-135505/13)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| DAVID L. BRACKHAHN and CATHERINE W. BRACKHAHN 122 CLEARWATER DRIVE PAGOSA SPRINGS, CO 81147 | | GREENPOINT MORTGAGE FUNDING 8055 EAST TUFTS AVE. STE 700 DENVER, CO  80237 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 122 CLEARWATER DRIVE PAGOSA SPRINGS, CO 81147 ARCHULETA County, Colorado LOT 21 ECHO LAKE ESTATES | COLORADO LAND TITLE COMPANY  PLACE OF SETTLEMENT 456 Lewis Street Pagosa Springs, CO  81147 | October 9, 2006  Disburse:10/13/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 9,222.46 | 403. | |
| 104. Payoff 1004522460 to INDYMAC BANK | 324,941.56 | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes        to | | 406. City/Town Taxes        to | |
| 107. County Taxes            to | | 407. County Taxes            to | |
| 108. Assessments             to | | 408. Assessments             to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | **334,164.02** | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 442,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes        to | | 510. City/Town Taxes        to | |
| 211. County Taxes            to | | 511. County Taxes            to | |
| 212. Assessments             to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | **442,000.00** | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 334,164.02 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 442,000.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( FROM ) ( X TO) BORROWER | 107,835.98 | 603. CASH ( TO ) ( FROM ) SELLER | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

122 CLEARWATER DRIVE  
PAGOSA SPRINGS, CO 81147  
ARCHULETA County, Colorado  
LOT 21 ECHO LAKE ESTATES

COLORADO LAND TITLE COMPANY  
PLACE OF SETTLEMENT  
456 Lewis Street  
Pagosa Springs, CO 81147

October 9, 2006  
Disburse: 10/13/06

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---:|---|---:|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 9,222.46 | 403. | |
| 104. Payoff 1004522460 to INDYMAC BANK | 324,941.56 | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes       to | | 406. City/Town Taxes       to | |
| 107. County Taxes       to | | 407. County Taxes       to | |
| 108. Assessments       to | | 408. Assessments       to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 334,164.02 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 442,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes       to | | 510. City/Town Taxes       to | |
| 211. County Taxes       to | | 511. County Taxes       to | |
| 212. Assessments       to | | 512. Assessments       to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 442,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 334,164.02 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 442,000.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 303. CASH ( FROM ) ( X TO ) BORROWER | 107,835.98 | 603. CASH ( TO ) ( FROM ) SELLER | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.  
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower                                                                 Seller

DAVID L. BRACKHAHN

CATHERINE W. BRACKHAHN

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

COLORADO LAND TITLE COMPANY  
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

HUD-1 (3-86) RESPA, HB4305.2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWERS FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $    @    % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $           to | | | |
| 702. $           to | | | |
| 703. Commission Paid at Settlement | | | |
| 704.                                     to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee   1.0000 %   to PRESTIGE OF PAGOSA, LLC HOME LOANS | | 4,420.00 | |
| 802. Loan Discount              %   to | | | |
| 803. Appraisal Fee              to PRESTIGE OF PAGOSA, LLC HOME LOANS   POC: 375.00 | | | |
| 804. Credit Report              to | | | |
| 805. Tax Service Fee            to GREENPOINT MORTGAGE FUNDING | | 79.00 | |
| 806. Flood Certification Fee    to GREENPOINT MORTGAGE FUNDING | | 11.00 | |
| 807. Underwriting Fee           to GREENPOINT MORTGAGE FUNDING | | 320.00 | |
| 808. Yield Spread Premium       to PRESTIGE OF PAGOSA, LLC HOME LOANS   POC:B7735.00 | | | |
| 809. Processing Fee             to PRESTIGE OF PAGOSA, LLC HOME LOANS | | 375.00 | |
| 810. Doc Prep Fee               to GREENPOINT MORTGAGE FUNDING | | 275.00 | |
| 811. Courier Fee to Broker      to PRESTIGE OF PAGOSA, LLC HOME LOANS | | 150.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 10/13/06 to 11/01/06 @ $  92.340000/day  ( 19 days   %) | | 1,754.46 | |
| 902. Mortgage Insurance Premium for      months to | | | |
| 903. Hazard Insurance Premium for   1.0 years  to | | | |
| 904. | | | |
| 905. Real Estate Taxes Due | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance           months @ $        per month | | | |
| 1002. Mortgage Insurance         months @ $        per month | | | |
| 1003. City/Town Taxes            months @ $        per month | | | |
| 1004. County Taxes               months @ $        per month | | | |
| 1005. Assessments                months @ $        per month | | | |
| 1006.                            months @ $        per month | | | |
| 1007.                            months @ $        per month | | | |
| 1008. Aggregate Adjustment       months @ $        per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee    to COLORADO LAND TITLE COMPANY | | 250.00 | |
| 1102. Loan Closing Fee             to COLORADO LAND TITLE COMPANY | | | |
| 1103. Recording Fees (Deed & SOA)  to COLORADO LAND TITLE COMPANY | | 22.00 | |
| 1104. 2% State Income Tax          to COLORADO DEPARTMENT OF REVENUE | | | |
| 1105. Document Preparation         to | | | |
| 1106. Notary Fees                  to | | | |
| 1107. Attorney's Fees | | | |
|        (includes above item numbers:                                       ) | | | |
| 1108. Title Insurance              to COLORADO LAND TITLE COMPANY | | 1,375.00 | |
|        (includes above item numbers: 8.1,100.30,100,LSMLP,110.8           ) | | | |
| 1109. Lender's Coverage     $   486,200.00              1,091.00 | | | |
| 1110. Owner's Coverage      $ | | | |
| 1111. Tax Certificate              to COLORADO LAND TITLE COMPANY | | 15.00 | |
| 1112. Express/Handling Fee         to COLORADO LAND TITLE COMPANY | | 60.00 | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $     ; Mortgage $  116.00; Releases $ | | 116.00 | |
| 1202. City/County Tax/Stamps:   Deed $        ; Mortgage $ | | | |
| 1203. State Tax/Stamps:         Deed $        ; Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey                       to | | | |
| 1302. Pest Inspection              to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 9,222.46 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

COLORADO LAND TITLE COMPANY
Settlement Agent

Certified to be a true copy.

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**EXHIBIT #2**

LENDER OR LENDER'S AGENT:
GreenPoint Mortgage Funding, Inc.
100 Wood Hollow Drive, Novato, CA 94945

☐ Preliminary  [X] Final
DATE: 10/09/2006
LOAN NO.: 0090702390
Type of Loan: Adjustable Rate

BORROWERS: David L. Brackhahn, Catherine W. Brackhahn

ADDRESS: 122 Clearwater Dr
CITY/STATE/ZIP: Pagosa Springs, CO 81147
PROPERTY: 122 Clearwater Dr, Pagosa Springs, CO 81147

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.705 % | $ 769,725.92 | $ 434,040.54 | $ 1,203,766.46 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 1 | $1,421.65 | 12/01/2006 | | | |
| 11 | $1,421.65 | 01/01/2007 | | | |
| 12 | $1,528.27 | 12/01/2007 | | | |
| 8 | $1,642.89 | 12/01/2008 | | | |
| 327 | $3,522.01 | 08/01/2009 | | | |
| 1 | $3,527.03 | 11/01/2036 | | | |

DEMAND FEATURE: [X] This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[X] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 122 Clearwater Dr, Pagosa Springs, CO 81147

ASSUMPTION: Someone buying this property  ☐ cannot assume the remaining balance due under original mortgage terms
[X] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ 45.00

PROPERTY INSURANCE: Property insurance is required on this loan. Flood insurance may be required if the property is located in an area designated as an area having special flood hazards. You may obtain property insurance and, if required, flood insurance from anyone you want that is acceptable to Creditor.

LATE CHARGES: If your payment is more than 15 days late, a late charge of 5.000% of the overdue payment of principal and interest will be assessed, but not less than U.S. $0.00 and not more than U.S. $N/A.

PREPAYMENT: If you pay off your loan early, you
[X] may   ☐ will not

| yearly rate | credit will cost you. | | | provided to you or on your behalf. | | after you have made all payments as scheduled. |
|---|---|---|---|---|---|---|
| 7.705 % | $ 769,725.92 | | | $ 434,040.54 | | $ 1,203,766.46 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 1 | $1,421.65 | 12/01/2006 | | | |
| 11 | $1,421.65 | 01/01/2007 | | | |
| 12 | $1,528.27 | 12/01/2007 | | | |
| 8 | $1,642.89 | 12/01/2008 | | | |
| 327 | $3,522.01 | 08/01/2009 | | | |
| 1 | $3,527.03 | 11/01/2036 | | | |

**DEMAND FEATURE:** [X] This loan does not have a Demand Feature. [ ] This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
[X] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 122 Clearwater Dr, Pagosa Springs, CO 81147

**ASSUMPTION:** Someone buying this property [ ] cannot assume the remaining balance due under original mortgage terms
[X] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $ 45.00

**PROPERTY INSURANCE:** Property insurance is required on this loan. Flood insurance may be required if the property is located in an area designated as an area having special flood hazards. You may obtain property insurance and, if required, flood insurance from anyone you want that is acceptable to Creditor.

**LATE CHARGES:** If your payment is more than 15 days late, a late charge of 5.000% of the overdue payment of principal and interest will be assessed, but not less than U.S. $0.00 and not more than U.S. $N/A.

**PREPAYMENT:** If you pay off your loan early, you
[X] may  [ ] will not       have to pay a penalty.
[ ] may   [X] will not       be entitled to a refund of part of the finance charge.

**See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.**
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____          _____
David L. Brackhahn                      Catherine W. Brackhahn

_____          _____